UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DONALD RICHARD LASKER, JR.,                    15-CV-923-MJR
                                                DECISION AND ORDER
          Plaintiff,

  -v-

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

Pursuant to 28 U.S.C. §636(c), the parties have consented to disposition of this case by a United States Magistrate Judge. (Dkt. No. 14).

Plaintiff Donald Richard Lasker, Jr. brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying him Social Security disability insurance benefits under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Lasker's motion (Dkt. No. 9) is granted, the Commissioner's motion (Dkt. No. 12) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

I.   *Procedural History*

On October 17, 2013, Lasker filed an application for a period of disability and disability insurance benefits ("DIB") alleging disability since July 3, 2013 due to spinal, cervical, lumbar disc displacement and severe headaches; diabetes; high blood pressure; high cholesterol; anxiety disorder; depression disorder; sleep disorder; sleep

apnea; and "spinal injury — cervical/lumbar." (*See* Tr. 78-87; Tr. 182-84).[1] The application was denied on December 30, 2013, after which Lasker requested a hearing before an Administrative Law Judge. (Tr. 88-99; 100-01). On January 7, 2015, Lasker, represented by counsel, appeared before Administrative Law Judge Bruce R. Mazzarella (the "ALJ") for a hearing. (Tr. 33-76). On February 27, 2015, the ALJ issued a decision denying Lasker's claim. (Tr. 14-32). Lasker thereafter requested review by the Appeals Council. (Tr. 6-13). On October 13, 2015, the Appeals Council denied Lasker's request, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5). This action followed.

II.   *Summary of the Evidence*

  A.   *Medical Evidence*

    i.   *Physical Impairment Evidence*

On March 19, 2013, Lasker suffered a whiplash injury in a motor vehicle accident. (Tr. 278). Six days later, Veterans Affairs Medical Center ("VAMC") staff performed a cervical spine x-ray of Lasker, the results of which showed mild disc space narrowing, spondylosis at C5-C6, and straightened cervical lordosis. (Tr. 436).

On April 24, 2013, Lasker was examined by Dr. L.N. Hopkins at UB Neurosurgery. Lasker reported persistent neck pain since the motor vehicle accident, numbness in three fingers of his right hand, tingling in the top of his head, and slight tingling in the left anterior thigh region. Dr. Hopkins described Lasker's whiplash injury as minor, noting that it caused him some neck pain but no neurologic dysfunction. He found Lasker to be 25% temporarily impaired and recommended an MRI scan and chiropractic treatment. (Tr. 278-79). On July 3, 2013, Lasker visited Dr. Hopkins

---

[1]   References to "Tr." are to the administrative record in this case.

complaining of headaches and numbness in his right arm. Dr. Hopkins' review of an MRI scan indicated significant degenerative disease with disc bulging in the paramedian region at two levels in the mid cervical spine. Dr. Hopkins recommended that Lasker not work for three to four months and that he attend physical therapy. (Tr. 284-85).[2] At an October 7, 2013 appointment at UB Neurosurgery, Lasker was directed to stay off work for eight more weeks. (Tr. 286-87).

On October 14, 2013, Lasker visited Dr. Nicolas Saikali at the Dent Neurologic Institute complaining of headaches and neck pain. Dr. Saikali diagnosed him with, among other things, a closed head injury, chronic posttraumatic headaches, and myofascial pain. (Tr. 291-93).

On December 10, 2013, Dr. Abrar Siddiqui performed a consultative internal medicine examination of Lasker. Lasker reported almost daily headaches with an intensity of ten out of ten, intermittent neck pain with an intensity of eight out of ten, and a history of sleep apnea since 2004 with use of a CPAP machine at home. On examination, Lasker was in no acute distress, his gait was normal, he could walk on his heels and toes without difficulty, his squat was full, he used no assistive devices, he could rise from a chair without difficulty, and his cervical spine ranges of motion were full, although he did complain of pain while rotating his neck. His lumbar spine ranges of motion were full, straight leg raising tests were negative bilaterally, he had no sensory deficits, and his strength was 5/5 in all four extremities. A lumbar spine x-ray was negative. Based on the foregoing, Dr. Siddiqui opined that there are no limitations in Lasker's ability to sit, stand, climb, push, pull, or carry heavy objects. (Tr. 543-49).

---

[2] Up until the date of this appointment, Lasker had been working in construction. (Tr. 202; 208). He has not worked since the appointment. (Tr. 43; 208).

On January 23, 2014, Lasker was examined for vertigo at the VAMC. He reported having vertigo for at least two years and that his condition worsened after the March 2013 motor vehicle accident. He described the vertigo as intermittent, with each episode lasting for days. (Tr. 590). On February 5, 2014, Lasker visited Dr. Ernesto Diaz-Ordaz at the VAMC complaining of dizziness, nausea, vomiting, and occasional vertigo episodes that last less than one day. Dr. Diaz-Ordaz, a neuro-otologist, diagnosed dizziness of undetermined cause, possibly a migraine variant of Meniere's disease,[3] and sensory neuro hearing loss in his left ear. (Tr. 628-29). Lasker followed up with Dr. Diaz-Ordaz on April 30, 2014, reporting that his dizziness was unchanged and that he experienced episodic vertigo with nausea and left ear tinnitus. Dr. Diaz-Ordaz recommended that Lasker not work until further notice. (Tr. 711-12).

Lasker also visited the VAMC on March 14, 2014 for evaluation and treatment of his vertigo. (Tr. 580-82). Six days later, on March 20, 2014, he underwent a balance performance evaluation at the Dent Neurologic Institute. The test results were abnormal. (Tr. 887-88). On April 14, 2014, Lasker was evaluated at Dent for headaches and dizziness. He was assessed with chronic post-traumatic headache, migraine without aura, myofascial pain, cervicalgia, and dizziness. (Tr. 728-30).

On June 17, 2014, Lasker treated with chiropractor Lance Formolo regarding his chronic lower back pain. (Tr. 788-92). He received trigger point injections for his pain at Dent on May 12 and June 23, 2014. (Tr. 719; 725). On June 26, 2014, he visited the VAMC complaining of three vertigo episodes within the last month, one of which included light-headedness and chest pain. (Tr. 842-44). He again visited the VAMC on

---

[3] Meniere's disease is "an affection characterized clinically by vertigo, nausea, vomiting, tinnitus, and fluctuating and progressive sensory hearing loss associated with endolymphatic hydrops." Stedman's Medical Dictionary (28th ed. 2006).

July 28, 2014 complaining of migraines, headaches, and dizziness.  He received a diagnosis of cervicogenic headaches, migraines, dizziness, and cervical spine disc disease.  (Tr. 782-87).

On August 5, 2014, Lasker visited Russell Talma, Dr. Diaz-Ordaz's physician assistant, for a follow up regarding his episodic vertigo.  Lasker complained of one to two vertigo episodes a week, with each episode causing hours of spinning and requiring a day of recovery.  Talma diagnosed Lasker with vertigo and stated he could not work for an indefinite period of time.  (Tr. 809-10).  Lasker saw Talma again on August 26, 2014 for vertigo and Meniere's symptoms.  (Tr. 886).

On August 13, 2014, Dr. Diaz-Ordaz and Talma completed a "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination."  They opined that Lasker is moderately limited in walking, standing, sitting, lifting, carrying, using his hands, using the stairs and climbing, that he is very limited in pushing, pulling, bending, and climbing ladders, and that he should not use ladders or engage in fall-risk activities or any activity requiring a change in head position, such as bending or standing.  (Tr. 126-27).

    ii.   *Mental Impairment Evidence*

On June 26, 2013, Dr. Sumera Shah, Lasker's primary care physician, diagnosed him with post-traumatic stress disorder ("PTSD").  (Tr. 427-33).  An August 22, 2014 PTSD screening at the VAMC also came back positive.  (Tr. 800-01).  On July 16, 2013, Lasker reported to Dr. Angela Gannon a six-year history of depression, feelings of anxiety without panic attacks, and recurring dreams related to his past work as a corrections officer.  On examination, Lasker's thought processes were tangential while

his mood was good with euthymic affect.  Dr. Gannon diagnosed Lasker with anxiety disorder not otherwise specified ("NOS") but ruled out depressive disorder.  She assigned a Global Assessment of Functioning ("GAF") score of 55.  (Tr. 419-21).  Lasker continued to treat with Dr. Gannon from September 17, 2013 to May 20, 2014.  (Tr. 388; 623; 661; 869).

On October 21, 2013, Tricia Masecchia, a Licensed Clinical Social Worker, diagnosed Lasker with depressive disorder.  (Tr. 382-83).

On December 10, 2013, Dr. Susan Santarpia performed a consultative psychiatric evaluation of Lasker and diagnosed him with anxiety disorder NOS and depressive disorder NOS.  Dr. Santarpia opined that Lasker could understand and follow simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits.  She found Lasker to be mildly impaired in performing complex tasks independently.  (Tr. 537-42).

    B.  *Administrative Hearing Testimony*

Lasker was born in 1969.  (Tr. 38).  He is a high school graduate and a military veteran, having served in the Air Force from 1987 to 1990, the Air Force Reserve from 1990 to 1995, and the Air National Guard from 1995 to 1997.  (Tr. 10; 208; 1010).  He previously worked as a corrections officer, equipment operator, and construction worker, but he has been out of work since his July 3, 2013 alleged onset date.  (Tr. 208).  Lasker lives alone, prepares his own meals, washes dishes once or twice a week,

does his own laundry, and grocery shops with his son and brother. (Tr. 38; 57-58). He has a driver's license but does not own a vehicle. (Tr. 41).

Lasker testified that the "biggest problem" that interferes with his ability to work is Meniere's disease. (Tr. 45). His symptoms include vertigo attacks, tinnitus, ear problems, balance problems, nausea, and vomiting. (Tr. 46). He averages two vertigo attacks a week, with each attack lasting one hour to three to four hours. (*Id.*). He spends two to three days in bed after each attack. (*Id.*). His second biggest problem is side effects from his medication, while his third biggest problem is neck and back pain, including headaches. (Tr. 47-48). He also suffers from sleep apnea, depression, and anxiety. (Tr. 54-56).

Lasker testified that he uses a cane when walking more than 100 yards. (Tr. 46-47). He can walk about 300 feet with his cane. (Tr. 60). He can sit for two hours at a time and for a total of three to four hours in an eight-hour workday, stand for one to two hours at a time and for a total of three to four hours in an eight-hour workday, and alternate sitting and standing for a total of four hours in an eight-hour workday. (Tr. 58-60).

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks

and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions, even if supported by substantial evidence, must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may conclude that a claimant is disabled "only if his physical or mental impairment or impairments are

of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). These steps proceed as follows.

First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations.

*Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is otherwise "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the claimant's] residual functional capacity assessment . . . with the physical and mental demands of [his or her] past relevant work." *Id.* §404.1520(f). If, based on that assessment, the claimant is able to perform his or her past work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work, the Commissioner considers whether, based on the claimant's residual functional capacity assessment, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work,

he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

   III.   *The ALJ's Decision*

The ALJ followed the required five-step process for evaluating disability claims. Under step one, the ALJ found that Lasker has not engaged in substantial gainful activity since July 3, 2013, the alleged onset date of his disability. (Tr. 19). At the second step, the ALJ determined that Lasker has the following severe impairments: Meniere's disease with vertigo; chronic neck and back discomfort; anxiety; depression; PTSD; and sleep apnea. (*Id.*). At step three, the ALJ found that Lasker does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 20). Before proceeding to step four, the ALJ assessed Lasker's RFC as follows:

> [T]he claimant has the residual functional capacity to sit for an 8-hour workday with only normal breaks and meal periods; stand and/or walk for an 8-hour workday with only normal breaks and meal periods; and lift and carry 50 pounds occasionally and 25 pounds frequently. The claimant should not work at unprotected heights. Further, the claimant is limited to simple, repetitive and routine tasks.

(Tr. 21). Proceeding to step four, the ALJ determined that Lasker could not perform his past relevant work as a corrections officer or general contractor. (Tr. 26). At the fifth

step, the ALJ considered Lasker's age, education, work experience, RFC, and the testimony of a vocational expert to conclude that he can perform jobs that exist in significant numbers in the national economy, including Packing Machine Tender, Laundry Worker II, Plastic Molding Machine Operator, and Cafeteria Attendant. (Tr. 26-27). Accordingly, the ALJ found that Lasker could adjust to other work and, therefore, that he has not been under a disability within the meaning of the Act from July 3, 2013 through the date of his decision. (Tr. 27).

IV. *Lasker's Challenges*

Lasker raises three objections to the Commissioner's decision: (1) the ALJ failed to develop the record by not requesting a medical source statement from a treating source; (2) the ALJ failed to properly weigh the employability assessment prepared by Dr. Diaz-Ordaz and his physician assistant, Russell Talma; and (3) the ALJ improperly assessed his credibility. The Court addresses each objection in turn.

A. *Medical Source Statement*

The Commissioner's regulations provide that medical reports should include "[a] statement about what you [*i.e.*, the claimant] can still do despite your impairment(s) . . . . Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete." 20 C.F.R. §404.1513(b)(6); *see also id.* §404.1527(a)(2) ("Evidence that you submit or that we obtain *may* contain medical opinions.") (emphasis added). The Second Circuit has interpreted these regulations as indicating that the ALJ's failure to request a medical source statement does not require remand if the record contains sufficient evidence from which the claimant's residual functional capacity can be

determined. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (summary order) (2d Cir. 2013); *see also Pellam v. Astrue*, 508 F. App'x 87, 89-90 (2d Cir. 2013) (summary order) (finding no error in failure to acquire medical source statement from claimant's treating physician where the ALJ had the claimant's treatment notes and relied upon an opinion from a consulting examiner).

Here, although the ALJ appears not to have requested a formal medical source statement from Lasker's treating sources, the record contains sufficient evidence from which the ALJ could assess his RFC — in particular, an employability assessment by Dr. Diaz-Ordaz and Talma, a consultative internal medicine examination by Dr. Siddiqui, and a consultative psychiatric evaluation by Dr. Santarpia. The ALJ cited all three opinions in determining Lasker's RFC. (Tr. 24-25). In addition to the opinion evidence, the record contains hundreds of pages of treatment notes from Lasker's treating physicians at the VAMC and elsewhere. On account of the extensive opinion evidence and treatment notes, the case record is sufficiently complete such that the ALJ's failure to request a medical source statement from a treating source does not require remand.[4]

### B. *Treating Provider Opinions*

Lasker also argues that the ALJ failed to properly assess Dr. Diaz-Ordaz's opinion in the August 13, 2014 employability assessment.[5] Dr. Diaz-Ordaz opined that Lasker is moderately limited in walking, standing, sitting, lifting, carrying, using his hands, using the stairs and climbing, that he is very limited in pushing, pulling, bending,

---

[4] *Haymond v. Colvin*, No. 1:11-CV-0631(MAT), 2014 WL 2048172 (W.D.N.Y. May 19, 2014), relied upon by Lasker in his memoranda of law, is inapposite. Unlike the instant action, the ALJ in *Haymond* did not rely upon any opinion evidence at all regarding the plaintiff's mental impairments in determining her RFC. *Id.* at *7-8.

[5] The assessment was jointly prepared by Dr. Diaz-Ordaz and his physician assistant, Russell Talma. Because Talma is not a "treating source" under the regulations, *see* 20 C.F.R. §§404.1502; 404.1513(a), Lasker's objection is properly directed at Dr. Diaz-Ordaz's opinion, only.

and climbing ladders, and that he should not use ladders or engage in fall-risk activities or any activity requiring a change in head position.

It appears that the ALJ found Dr. Diaz-Ordaz to be a "treating source." *See* 20 C.F.R. §404.1502.[6] Under the "treating physician rule," the ALJ is required to give controlling weight to a treating source's opinion when the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* §404.1527(c)(2). If the ALJ elects not to give a treating source's opinion controlling weight, he must consider the factors in 20 C.F.R. §404.1527(c) to determine the weight to give the opinion. These factors are the frequency of examination, the length, nature, and extent of the treatment relationship, the amount of evidence supporting the opinion, the consistency of the opinion with the record as a whole, whether the treating source is a specialist, and any other factor that tends to support or contradict the opinion. *See id.* §404.1527(c). The ALJ's failure to provide good reasons for not crediting a treating source's opinion ordinarily requires remand. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010); *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion . . . .").

---

[6] "Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (*e.g.*, twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source." 20 C.F.R. §404.1502.

Here, the ALJ gave "some weight" to Dr. Diaz-Ordaz's opinion that Lasker should not use ladders or engage in fall-risk activities. (Tr. 24). It appears that the ALJ gave no weight at all to Dr. Diaz-Ordaz's opinion concerning Lasker's exertional limitations. (*Id.*).[7] The ALJ instead gave "significant weight" to Dr. Siddiqui's consultative examination opinion that Lasker has no limitations in his ability to sit, stand, climb, push, pull, or carry heavy objects. (*Id.*). Because the ALJ did not give Dr. Diaz-Ordaz's opinion controlling weight, he should have applied the factors in §404.1527(c) to determine what weight to give the opinion. It is not clear whether and to what extent the ALJ considered the applicable factors. While the ALJ commented that "[t]he medical evidence of record does not support the exertional limitations" cited in Dr. Diaz-Ordaz's assessment (*id.*), this conclusory statement does not satisfy the treating physician rule. *See Svay v. Colvin*, No. 15-cv-6080, 2016 WL 922085, at *4 (W.D.N.Y. Mar. 11, 2016) (remanding where ALJ discounted treating source's opinion for the conclusory reason that it was "not supported by the medical evidence of record"); *see also Boyd v. Colvin*, No. 6:15-CV-06667(MAT), 2016 WL 7155241, at *4 (W.D.N.Y. Dec. 8, 2016) (remanding because it was not clear whether and to what extent the ALJ considered the applicable factors in reviewing the treating source's opinion). The Court cannot glean from the record why the ALJ discounted Dr. Diaz-Ordaz's opinion and assigned greater weight to Dr. Siddiqui's opinion. The ALJ's failure to consider the factors in §404.1527(c) in evaluating Dr. Diaz-Ordaz's opinion and to provide good reasons for the weight he assigned to the opinion constitutes a violation of the treating physician rule.

---

[7] To the extent the ALJ assigned some other weight to this portion of Dr. Diaz-Ordaz's opinion without identifying the weight given, the ALJ committed legal error requiring remand. *See Gagovits v. Colvin*, No. 15-CV-3246(JS), 2016 WL 4491537, at *9 (E.D.N.Y. Aug. 25, 2016).

The Commissioner argues, however, that remand is not warranted here because the ALJ's RFC determination would have been no different had he analyzed Dr. Diaz-Ordaz's opinion in compliance with the treating physician rule. *See Zabala*, 595 F.3d at 409 ("[W]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration.") (alterations in original) (quoting *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Contrary to the Commissioner's argument, Dr. Diaz-Ordaz's opinion is much more favorable to Lasker than the opinion of Dr. Siddiqui to which the ALJ assigned significant weight. Had the ALJ properly applied the treating physician rule to Dr. Diaz-Ordaz's opinion, he might very well have assigned the opinion more weight and reached a different RFC determination. *See Cottrell v. Colvin*, No. 15-CV-702-FPG, --- F. Supp. 3d ----, 2016 WL 4523187, at *5 (W.D.N.Y. Aug. 30, 2016); *Sottasante v. Colvin*, No. 1:15-CV-00419EAW, --- F. Supp. 3d ----, 2016 WL 5234685, at *14 (W.D.N.Y. Sept. 22, 2016). It therefore cannot be said that the ALJ's failure to correctly apply the treating physician rule is harmless error, and this matter must be remanded for further proceedings. On remand, the ALJ is instructed to consider the factors listed in 20 C.F.R. §404.1527 when evaluating Dr. Diaz-Ordaz's opinion and to expressly state the weight given to all parts of the opinion.

    C. *Credibility*

Lasker also argues that the ALJ improperly assessed his credibility. "A treating physician's opinion is a significant part of the evidence that is weighed in determining credibility of a claimant under 20 C.F.R. §404.1529." *Gagovits*, 2016 WL 4491537, at *13 (quoting *Garner v. Colvin*, No. 13-CV-4358(JCF), 2014 WL 2936018, at *10

(S.D.N.Y. June 27, 2014)). Therefore, because the Court is remanding this matter for proper application of the treating physician rule, the ALJ should readdress Lasker's credibility on remand as well. *Id.*

## **CONCLUSION**

For the foregoing reasons, Lasker's motion for judgment on the pleadings (Dkt. No. 9) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is denied, and this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      January 13, 2017
            Buffalo, New York

                                        */s/ Michael J. Roemer*
                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge